THE STATE, EX REL. NORMAN, APPELLANT, *v.*
INDUSTRIAL COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as State, ex rel. Norman, *v.* Indus. Comm. (1982), 1 Ohio St. 3d 263.]

(No. 81-1774—Decided August 18, 1982.)

*Agee, Clymer & Morgan Co., L.P.A.,* and *Mr. Philip J. Fulton,* for appellant.

*Mr. William J. Brown,* attorney general, and *Mr. Merrill H. Henkin,* for appellee Industrial Commission.

CLIFFORD F. BROWN, J. It is well established that the determination of factual situations is within the final jurisdiction of the Industrial Commission, and subject to correction by action in mandamus only upon a showing of abuse of discretion. *State, ex rel. G F Business Equip.,* v. *Indus. Comm.* (1981), 66 Ohio St. 2d 446, 447 [20 O.O.3d 379, 380]. Accordingly, the reports of the four examining physicians must be analyzed to determine whether they support or contradict the decision of the commission.

Dr. DiMauro, who was Mrs. Norman's treating physician, originally examined her on September 28, 1978, and found that her psychiatric disability was temporary and total. In his April 3, 1980 letter to Mrs. Norman's attorney, submitted to the commission, he stated his finding that Norman's psychiatric disability was permanent and total in view of the fact that she had not shown any improvement since she started coming to him for treatment. Thus, he concluded that relator's psychiatric condition alone caused her to be permanently and totally disabled.

Where the issue before the commission is whether a claimant is permanently and totally disabled on account of the combined effect of two or more allowed conditions, medical testimony not evaluating the combined effect of those conditions cannot constitute evidence that the claimant is not permanently and totally disabled. *State, ex rel. Anderson,* v. *Indus. Comm.* (1980), 62 Ohio St. 2d 166, 168 [16 O.O.3d 199, 200]. Here, the issue before the commission was whether Norman, who had previously allowed physical and psychiatric conditions, was now permanently and totally disabled. The rule stated in *Anderson,* however, applies only to reports which conclude a claimant is *not* permanently and totally disabled. Where a medical report concludes that a claimant is permanently and totally disabled on the basis of one condition alone, the *Anderson* test does not preclude use of that report as evidence of claimant's permanent and total disability. In this instance, since Dr. DiMauro had concluded that relator's psychiatric condition alone caused her to be permanently and totally disabled, there was no need to specifically mention her back problems. Relator's reactive depression arising from the

original physical injury, was found to have totally and permanently disabled her, and was probative evidence of that fact before the commission.

The reports of Drs. Kraus, Reynolds and Caruso did not find Norman to be permanently and totally disabled.[1] Each physician, however, examined her physical or psychiatric condition *in isolation,* without considering whether the combined effect of her physical and emotional problems made her permanently and totally disabled. This failure in all three reports to consider Norman's condition as a whole renders the reports "no evidence" under the *Anderson* test.

This case presents a textbook example of the different responsibilities incumbent on examining physicians reporting in connection with a claim for permanent and total disability. If a physician states one is permanently and totally disabled as the result of an allowed condition alone, there is no need for the physician also to evaluate other allowed conditions. There are not degrees of total disability. One is either able to work or not able to work. However, if a physician determines that one is not permanently and totally disabled as the result of one condition, the physician must continue and analyze the additional allowed conditions to determine their combined effect upon the injured worker evaluated. This is the real meaning of *Anderson, supra.* Obviously, one must look at the person as a whole in evaluating whether they can work or not.

Because the three reports finding relator not permanently and totally disabled did not consider the whole person, there was no evidence on which the commission could rely in denying total disability to Norman. The only

---

[1] The report of Dr. Reynolds, on which the commission expressly relied, concluded that "[i]t is my feeling that * * * [claimant] is not permanently and totally impaired as a result of this injury. I do not feel her percentage of impairment is any greater than that 62% which has been previously awarded." Dr. Reynolds failed to use any language indicating he had considered her psychiatric impairment. Because he did not consider Norman's condition as a whole, this report should not have been probative evidence that Norman was not permanently and totally disabled.

The report of Dr. Kraus, nearly three times the length of that of Dr. Reynolds, was not expressly relied on by the commission, perhaps because he concluded as follows:

"OPINION: It is my understanding that this claimant has received an overall permanent partial disability award of Sixty-Two Percent (62%) under Claim No. 69-37885. Therefore, it is my opinion that she has been fully compensated for her orthopaedic injury resulting from this claim. She is not permanently and totally disabled solely on the basis of her allowed orthopaedic condition. However, the 'reactive depression' is another matter, and this should be evaluated by a psychiatrist. It may well be that the combination of the psychiatric condition plus her orthopaedic condition does render her permanently and totally disabled, but this would depend upon the additional overall permanent partial disability awarded to the psychiatric problem by a psychiatrist." Thus, Dr. Kraus straightforwardly recognized that he had not treated the whole person, and thus his report could not be evidence that Norman was not permanently and totally disabled.

The fourth report of an examining physician, by Dr. Caruso, considered relator's psychiatric condition alone and found her partially disabled by a post-traumatic stress disorder in the amount of 15 percent. This report, because it did not consider Norman's previous allowed injury, like the other commission-ordered examinations, cannot constitute evidence on which the commission may rely when it denies an award for permanent and total disability.

evidence before the commission which did evaluate the person as a whole, *i.e.,* the evaluation by Dr. DiMauro, supported the conclusion that additional compensation was warranted.

Accordingly, it was an abuse of discretion for the commission to deny relator a permanent and total disability award. Finding relator's grounds for a writ of mandamus well taken, the judgment of the Court of Appeals is reversed and the writ is hereby allowed.

*Judgment reversed and writ allowed.*

CELEBREZZE, C.J., W. BROWN and SWEENEY, JJ., concur.

LOCHER, HOLMES and KRUPANSKY, JJ., dissent.

LOCHER, J., dissenting. In rendering its decision today, the majority has freed claimants seeking permanent total disability based on two allowed conditions from an essential requirement for proving their claims. Such a claimant need no longer present as evidence a medical report finding his permanent and total disability to be a result of the combination of the two conditions, as long as the commission similarly offers no report which addresses both conditions in reaching the opposite conclusion. Indeed, today's holding apparently discharges claimants seeking such disability from presenting a medical report evaluating both infirmities even when the commission does proffer reports conflicting with claimant's and considering both conditions. It is both this inherent inequity in the court's ruling and the court's blatant disregard of *State, ex rel. Teece,* v. *Indus. Comm.* (1981), 68 Ohio St. 2d 165 [22 O.O.3d 400], which necessitate my dissent in the instant action.

No argument is made here that Dr. DiMauro's report in the present cause does not comply with the test enunciated by the court in *State, ex rel. Anderson,* v. *Indus. Comm.* (1980), 62 Ohio St. 2d 166 [16 O.O.3d 199].[2] The report is indeed evidence of relator's permanent and total disability, notwithstanding the fact that it only addresses relator's psychiatric condition. However, this court's holding in *Teece,* which on its salient facts is indistinguishable from the case at bar,[3] compels me to afford greater effect to the reports relied on by the commission than does the majority in its decision. In delineating the evidentiary value of reports which do not address all of the recognized infirmities

---

[2] In *State, ex rel. Anderson,* v. *Indus. Comm., supra,* at 168, this court held: "* * * where the issue before the commission is whether a claimant is permanently and totally disabled on account of the combined effect of two or more allowed conditions, medical testimony not evaluating the combined effect of those conditions cannot constitute evidence that the claimant is not permanently and totally disabled. * * *"

[3] In *Teece,* as in the herein cause, the claimant had applied for permanent total disability based on two allowed conditions—one physical, the other psychiatric—and submitted, in support of her

upon which claimant's application for permanent and total disability is based this court held in *Teece* that:

"While the evidence in the reports of Drs. McCloud, Horwitz and Giray [which failed to consider all of the allowed conditions] is insufficient in itself to support or deny a claim for permanent and total disability, it is nonetheless relevant and admissible. In *Fox* v. *Indus. Comm.* (1955), 162 Ohio St. 569, 577 [55 O.O. 472], this court held that '* * * evidence is relevant and admissible if it tends to prove a certain element of an ultimate fact even though it does not tend to establish all elements of the ultimate fact necessary to be proved; and evidence is relevant and admissible if it tends to corroborate evidence of certain but not all elements of a necessary ultimate fact. * * *' " *Teece, supra,* at 168. Thus, though a report may be inadequate, under the *Anderson* standard, to establish that a claimant is or is not permanently and totally disabled, it may be used "to test the credibility and reliability" of a report which does satisfy those requirements. *Teece, supra,* at 168.

Clearly, then, the commission acted properly in considering the report of Dr. Caruso, which contradicted that of Dr. DiMauro, in rendering its decision. Both reports assessed only the disability resulting from relator's psychiatric condition, and the commission was in no way legally constrained to favor Dr. DiMauro's report over the other. Indeed, as this court stated in *Teece, supra,* at 169: "The holdings in *State, ex rel. Anderson,* v. *Indus. Comm.* and *State, ex rel. Wallace,* v. *Indus. Comm., supra* [(1979), 57 Ohio St.2d 55 (11 O.O.3d 216)], do not require the commission to accept the factual findings stated in a properly qualified medical report at face value and unquestioningly adopt them as those of the commission." Had Dr. DiMauro considered *both* conditions in making his recommendation, the application of *Anderson* would necessitate a different result. However, his failure to address both allowed claims left his report vulnerable to the conflicting reports of others which also evaluated only the one condition.

Today's decision permits applications for permanent total disability based on two or more allowed conditions to be automatically approved in the absence of at least one contradicting report which addresses all of the recognized infirmities. Such blanket approbation allows a slothfulness on the part of claimants—freeing them from ever having to submit reports that consider all recognized conditions—which this court presently vigorously denies to the commission. As even a superficial review of the language in both *Teece* and this court's recent decision in *State, ex rel. Hughes,* v. *Indus. Comm.* (1982), 1 Ohio St. 3d 57, indicates, the *Anderson* test circumscribes the use of medical reports not complying with its guidelines to prove that a claimant is

---

application, a medical report addressing only one of the conditions. Similarly, the commission, in *Teece,* denied claimant's application, relying on reports which considered only the condition addressed by claimant but which reached the opposite conclusion.

permanently and totally disabled as well as to show that he is not.[4] Unfortunately, the majority has misread *Anderson* and its progeny in arriving at this most ill-advised decision, which demands more of the commission in evaluating a claimant's application for permanent total disability than is required of the applicant in proving his claim.

HOLMES and KRUPANSKY, JJ., concur in the foregoing dissenting opinion.

---

[4] The court stated in *State, ex rel. Hughes,* v. *Indus. Comm., supra* (1 Ohio St. 3d 57), that *Anderson* prohibits "the mixing and matching in crazy-quilt fashion of physical and psychiatric findings made by various physicians either to *establish* or deny that claimant is permanently and totally disabled." (Emphasis added.)