[Cite as *Jacobs v. Jacobs*, 2012-Ohio-5815.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

| | | |
|---|---|---|
| MELISA JACOBS nka BOYLES | | C.A. No. 12CA0019 |
| Appellant | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| RYAN JACOBS | | COURT OF COMMON PLEAS COUNTY OF WAYNE, OHIO |
| Appellee | | CASE No. 07-DR-0519 |

DECISION AND JOURNAL ENTRY

Dated: December 10, 2012

---

DICKINSON, Judge.

INTRODUCTION

{¶1} At the time Ryan and Melisa Jacobs divorced, the court awarded Mr. Jacobs custody of their two children. Ms. Jacobs lost her job, fell behind in her child support payments, and moved to South Carolina in an attempt to find work. A couple of years later, she moved for a change in custody, arguing that her situation had improved, that there were problems with Mr. Jacobs's care of the children, and that she could provide a better home for them. Mr. Jacobs moved the court to find Ms. Jacobs in contempt and for attorney fees, arguing that Ms. Jacobs was still behind in her child support payments. Following a hearing, a magistrate found that there had not been a substantial change in circumstances, but, even if there had been, it was in the children's best interest to remain with Mr. Jacobs. He recommended that the parenting time order be modified so that Ms. Jacobs would have the standard schedule for a parent who lives out-of-state, that Ms. Jacobs be held in contempt for not complying with the support order, and

that Mr. Jacobs's motion for attorney fees be denied. Both parties filed objections, but the trial court adopted most of the magistrate's recommendations. It also determined that, although the divorce decree had allowed each party to claim one child for tax purposes, Mr. Jacobs should receive both exemptions. Ms. Jacobs has appealed, assigning as error that the court incorrectly awarded Mr. Jacobs both tax exemptions, incorrectly found her in contempt, and incorrectly failed to modify the custody designation. Mr. Jacobs has cross-appealed, arguing that the court should have awarded him attorney fees. We affirm because the court correctly concluded that Ms. Jacobs did not establish that it would be in the children's best interest for her to receive a tax exemption, it correctly found Ms. Jacobs in contempt, it correctly refused to modify its custody decision, and its refusal to award Mr. Jacobs attorney fees did not constitute plain error.

## DEPENDENT TAX EXEMPTION

{¶2} Ms. Jacobs's first assignment of error is that the trial court incorrectly awarded the tax exemption for both children to Mr. Jacobs. She has argued that Mr. Jacobs failed to present any evidence that it would be in the best interest of the children for him to receive the exemptions.

{¶3} Under Section 3119.82 of the Ohio Revised Code, "[w]henever a court . . . modifies, reviews, or otherwise reconsiders a court child support order, it shall designate which parent may claim the children who are the subject of the court child support order as dependents for federal income tax purposes . . . ." "The allocation of tax exemptions between parents will not be disturbed absent an abuse of discretion." *Ankney v. Bonos*, 9th Dist. No. 23178, 2006-Ohio-6009, at ¶ 38, overruled on other grounds by *Gunderman v. Gunderman*, 9th Dist. No. 08CA0067-M, 2009-Ohio-3787.

**{¶4}** If the parties do not agree on which parent should claim the children, the court may permit the non-residential parent to claim them if it determines "that this furthers the best interest of the children." R.C. 3119.82 "[T]he court shall consider . . . any net tax savings, the relative financial circumstances and needs of the parents and children, the amount of time the children spend with each parent, the eligibility of either or both parents for the federal earned income tax credit or other state or federal tax credit, and any other relevant factor concerning the best interest of the children." *Id.* Net tax savings "occur through allocation to the noncustodial parent only if the noncustodial parent's taxable income falls into a higher tax bracket than the tax bracket of the custodial parent." *Singer v. Dickinson*, 63 Ohio St. 3d 408, 415 (1992). "While the trial court does not need to state a basis for allocating the exemption, the record does need to include financial data in relation to the above factors to support the trial court's decision." *Ankney v. Bonos*, 9th Dist. No. 23178, 2006-Ohio-6009, ¶ 40.

**{¶5}** Ms. Jacobs has argued that the trial court's decision is not supported by the record, noting that there were no tax records entered into evidence. Under Section 3119.82, however, there is a presumption that "the residential parent receives the tax dependency exemption." *Geschke v. Geschke*, 9th Dist. Nos. 3266-M, 3268-M, 2002-Ohio-5426, ¶ 32 (citing *Singer v. Dickinson*, 63 Ohio St. 3d 408, 411 (1992)); R.C. 3119.82. "[T]he burden is on the [non-residential parent], not the court, to provide the information required in order to overcome the presumption." *Geschke*, 2002-Ohio-5426 at ¶ 32. Ms. Jacobs did not present any evidence demonstrating that it would be in the best interest of the children for her to continue receiving one of the exemptions. Accordingly, we conclude that the trial court exercised proper discretion when it awarded both exemptions to Mr. Jacobs. Ms. Jacobs's first assignment of error is overruled.

## CONTEMPT FINDING

{¶6} The first part of Ms. Jacobs's second assignment of error is that the trial court incorrectly found her in contempt. According to Ms. Jacobs, the court did not have jurisdiction to hold her in contempt because the issues of child support and enforcement of child support orders had been transferred to South Carolina. She has also argued that the evidence demonstrated that she had paid off any arrearages before the hearing.

{¶7} Under Section 3115.07(A) of the Ohio Revised Code, "[a] tribunal of this state has continuing, exclusive jurisdiction over a child support order it issues as long as the obligor, individual obligee, or child subject to the child support order is a resident of this state, unless all of the parties who are individuals have filed written consents with the tribunal of this state for a tribunal of another state to modify the order and assume continuing, exclusive jurisdiction." Although an investigator from the child support enforcement agency testified that "the enforcement part" of the support order had been transferred to South Carolina, there is no evidence that Mr. Jacobs has given written consent to have exclusive jurisdiction over child support issues transferred to South Carolina. Accordingly, the trial court correctly concluded that it retained jurisdiction to determine whether Ms. Jacobs was in contempt of the support order.

{¶8} Regarding whether Ms. Jacobs violated the order, the divorce decree directed her to pay Mr. Jacobs $82.00 per month per child. According to the child support enforcement agency investigator, Ms. Jacobs did not make any voluntary payments between January 2011 and July 2011. Instead of making the monthly payments required by the decree, she allowed an arrearage to accrue, which the agency reduced by garnishing her state and federal tax refunds. According to Ms. Jacobs, when she learned that the agency could collect her child support

obligation by intercepting her tax returns, she decided to stop making monthly payments "[b]ecause then that was one less thing that we actually had to worry about and actually getting the money and then paying them in hand."

{¶9} The trial court's determination that Ms. Jacobs should be held in contempt for not complying with the child support order is supported by sufficient evidence and is not against the manifest weight of the evidence. We also conclude that the trial court exercised proper discretion when it imposed a suspended sentence on Ms. Jacobs for her actions. *See State ex rel. Anderson v. Indus. Comm'n*, 9 Ohio St. 3d 170, 172 (1984) (noting that courts have "wide discretion to determine the punishment for contempt of [their] own orders."). The first part of Ms. Jacobs's second assignment of error is overruled.

## RESIDENTIAL PARENT

{¶10} The second part of Ms. Jacobs's second assignment of error is that the trial court incorrectly found that there was no change in circumstances and that it was in the best interest of the children for Mr. Jacobs to remain the residential parent. Under Section 3109.04(E)(1)(a) of the Ohio Revised Code, "[a] court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child." The Ohio Supreme Court has explained that a change in circumstances "must be a change of substance, not a slight or inconsequential change." *Davis v. Flickinger*, 77 Ohio St. 3d 415, 418 (1997). It has also explained that a trial court must "have wide latitude in considering all the evidence before [it] . . . ." *Id.* Accordingly, the court's decision "will not be

reversed" if it "is supported by a substantial amount of credible and competent evidence[.]" *Id*. (quoting *Bechtol v. Bechtol*, 49 Ohio St. 3d 21, syllabus (1990)).

{¶11} Ms. Jacobs has argued that the advantages of changing the children's environment outweigh any harm that might result. *See* R.C. 3109.04(E)(1)(a)(iii). At the hearing, she expressed concern about how Mr. Jacobs was caring for the children. She noted that, during the previous school year, their daughter had had over twenty absences and was tardy a similar number of days. She noted that their son was not enrolled in a preschool, even though he was eligible. She also noted that Mr. Jacobs had not told her about all of the children's medical visits and that he refused to disclose the identity of their daughter's psychological counselor. She also asserted that Mr. Jacobs drinks excessively while the children are in his care. In contrast, she testified that her home was a suitable environment for the children, that their school attendance would be better under her watch, and that she would keep Mr. Jacobs apprised of their children's medical and psychological issues.

{¶12} There are ten factors that a court must consider when determining whether it is in the best interest of the children to modify an award of custody. R.C. 3109.04(F)(1). Those factors are "[t]he wishes of the child's parents[,] . . . the wishes and concerns of the child[ren], . . . [t]he child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest[,] [t]he child's adjustment to the child's home, school, and community[,] . . . [t]he mental and physical health of all persons involved in the situation[,] . . . [t]he parent more likely to honor and facilitate court-approved parenting time right[,] . . . [w]hether either parent has failed to make all child support payments, . . . [w]hether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child

being an abused child or a neglected child[,] . . . [w]hether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time[,] . . . [and] [w]hether either parent has established a residence, or is planning to establish a residence, outside this state."

{¶13} The magistrate found that the parties' children have a good relationship with Mr. Jacobs and his girlfriend, that the children are well-adjusted to their home and community, that the parties' daughter is well-adjusted to her school, that Mr. Jacobs does not have any physical or mental health issues, that Mr. Jacobs has honored and facilitated the children's visitation with Ms. Jacobs, that Ms. Jacobs has failed to make some of her child support payments on a monthly basis, that there were no substantiated allegations of abuse involving Mr. Jacobs or anyone in his household, and that Mr. Jacobs had not continuously or willfully denied parenting time. He found that it was in the best interest of the children to remain with Mr. Jacobs and that the benefits of changing the children's home did not outweigh the harm that it would likely cause. The trial court adopted the magistrate's findings and conclusions, agreeing with the magistrate's assessment that "this was not even 'a close call.'"

{¶14} According to the guardian ad litem, Mr. Jacobs told her that the reason that his daughter had missed so much time the previous school year was because of illnesses. Mr. Jacobs testified that some of the times his daughter was tardy was because of doctor appointments and other times it was because she had missed the bus. Mr. Jacobs said that, despite the missed time, his daughter's performance in school was good. Regarding their son, Mr. Jacobs said that he had attempted to enroll him in several preschools, but they were full. He said that he had placed their son on the waiting list at one of the schools and that, in the meantime, his girlfriend, who has been trained in early childhood education and development, watched the son during the day. Mr.

Jacobs testified that, although he had previously had a problem with alcohol, he never drank to excess when there were no other adults present to take care of the children or while the children were awake. He also testified that the reason he had not revealed the identity of their daughter's counselor was because that was the counselor's recommendation.

{¶15} Upon review of the record, we conclude that there was competent, credible evidence to support the trial court's conclusion that it was in the children's best interest to reside with Mr. Jacobs. Although Ms. Jacobs raised some valid concerns about Mr. Jacobs's care of the children, he established that he had remedied most of the problems and was taking steps to correct the others. In addition, the children's guardian ad litem found that the children were well-adjusted to their current home and community and recommended that they remain in Mr. Jacobs's custody.

{¶16} Ms. Jacobs has also argued that the court should have ordered Mr. Jacobs to share some of her transportation costs. She has argued that the reason she moved to South Carolina was because she had no job prospects in Ohio. She has argued that, in light of the fact that she moved in order to support her children, it is unfair for her to bear the entire cost of seeing them.

{¶17} Although Ms. Jacobs testified that she moved out of Ohio to seek employment, she said that she chose South Carolina because her boyfriend lived there and had asked her "to come down there with him." According to Ms. Jacobs, she moved to South Carolina in May 2009, married her boyfriend that fall, and stopped looking for work when she had a baby the following spring. Considering that Ms. Jacobs appears, in fact, to have had multiple motives for moving to South Carolina, that she failed to obtain employment after moving there, and that she was not looking for work at the time of the hearing, it was reasonable for the court to not make

Mr. Jacobs bear any of her transportation expenses. The second part of Ms. Jacobs's second assignment of error is overruled.

ATTORNEY FEES

**{¶18}** Mr. Jacobs's assignment of error is that the trial court incorrectly failed to require Ms. Jacobs to pay his attorney fees. He has argued that her motion for change of custody had no merit and that, despite her claim that she has no income, she obviously had funds to litigate her motion and to pursue an appeal. He has also argued that the court was required to order her to at least pay his attorney fees in connection with the contempt action. R.C. 3109.05(C).

**{¶19}** "In any post-decree motion or proceeding that arises out of an action for divorce, . . . the court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable." R.C. 3105.73(B). "In determining whether an award is equitable, the court may consider the parties' income, the conduct of the parties, and any other relevant factors the court deems appropriate, but it may not consider the parties' assets." *Id.*

**{¶20}** The magistrate found that, although it was the sort of case in which an award of attorney fees would be appropriate, Ms. Jacobs "just cannot afford it." He noted that she is a stay-at-home mother who relies on the income of her new husband, which is "paltry." Mr. Jacobs has not pointed to any evidence in the record that disputes the magistrate's findings of fact. We, therefore, conclude that the court properly exercised its discretion when it refused to award Mr. Jacobs attorney fees under Section 3105.73(B).

**{¶21}** Regarding whether the court was required to make Ms. Jacobs pay the fees Mr. Jacobs incurred in prosecuting his contempt motion, Section 3109.05(C) provides that, "[i]f any person required to pay child support . . . is found in contempt of court for failure to make support

payments under the order, the court that makes the finding . . . shall . . . require the person to pay any reasonable attorney's fees of any adverse party, as determined by the court, that arose in relation to the act of contempt . . . ." The problem with Mr. Jacobs's argument, however, is that he did not make it to the trial court.

{¶22} Under Rule 53(D)(3)(b)(iv) of the Ohio Rules of Civil Procedure, "[e]xcept for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion . . . unless the party has objected to that finding or conclusion as required by Civ.R. 53(D)(3)(b)." In his objections to the magistrate's decision, Mr. Jacobs argued that the court should award him attorney fees under Section 3105.73. He did not argue that the court was required to award him fees under Section 3109.05(C). *See* Civ. R. 53(D)(3)(b)(ii) (requiring objections to "be specific and state with particularity all grounds for objection."). He, therefore, forfeited his entitlement to attorney fees under Section 3109.05(C) unless he can establish plain error.

{¶23} "In appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error . . . seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Goldfuss v. Davidson*, 79 Ohio St. 3d 116, syllabus (1997). We conclude that, even though the trial court should have awarded Mr. Jacobs attorney fees in connection with his contempt motion, the error does not seriously affect "the basic fairness, integrity, or public reputation of the judicial process[.]" *Id*. Mr. Jacobs's cross-assignment of error is overruled.

CONCLUSION

**{¶24}** Ms. Jacobs did not establish that it would be in the children's best interest for her to receive one of the child tax exemptions, the court correctly found that she violated the child support order, the court correctly refused to modify its custody decision, and its decision to not award Mr. Jacobs attorney fees did not constitute plain error. The judgment of the Wayne County Common Pleas Court is affirmed.

Judgment affirmed.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

CLAIR E. DICKINSON
FOR THE COURT

WHITMORE, P. J.
CONCURS.

CARR, J.
CONCURS IN JUDGMENT ONLY.


APPEARANCES:

L. RAY JONES, Attorney at Law, for Appellant.

TODD E. CHEEK, Attorney at Law, for Appellee.