[Cite as *In re S.M.J.*, 2024-Ohio-1495.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE COUNTY

IN RE: S.M.J.

:
:
:
:   C.A. No. 2023-CA-54
:
:   Trial Court Case No. C0040082-0B
:
:   (Appeal from Common Pleas Court-
:   Juvenile Division)
:
:

. . . . . . . . . . .

O P I N I O N

Rendered on April 19, 2024

. . . . . . . . . . .

ROBERT L. SCOTT, Attorney for Appellant, N.M.

CHRISTOPHER A. MURRAY, Attorney for Appellee, Child Support Enforcement Agency

. . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Appellant N.M. ("Father") appeals from a trial court judgment finding that he failed to comply with purge conditions imposed after a second contempt finding for failure to pay child support. The court therefore required Father to serve the remaining part of a previously imposed 60-day jail sentence. The court also imposed a 90-day sentence for a third contempt finding also related to failure to pay child support, but it suspended

that sentence based on Father's compliance with purge conditions.

{¶ 2} According to Father, the trial court abused its discretion in making these decisions by failing to consider the following matters: Father's inability to work; the fact that Father was on government assistance and had four other children to support; and the fact that Father possibly could document that the child in question here (S.M.J.) had lived with Father for a number of years.

{¶ 3} After reviewing the record, which includes Father's 15-year history of repeated failure to pay minimal child support, repeated failure to appear for court hearings, disregard of court orders, and failure to provide any documentation of his excuses, we find no abuse of discretion in the trial court's decisions. Accordingly, the judgment of the trial court will be affirmed.

I. Facts and Course of Proceedings

{¶ 4} We begin by noting that the background of this case is lengthy because Father's failure to pay support has extended over a period of around 15 years. As relevant here, the pertinent facts are as follows.

{¶ 5} This case began in March 2008, when the Greene County Child Support Enforcement Agency ("CSEA") filed a contempt motion against Father, based on his failure to pay an administrative child support obligation for his child, S.M.J., who was born in August 2005. After Father failed to appear for a hearing, a magistrate filed a decision in September 2008 which found that current child support had been established at $50.00 per month as of September 2007 and that, as of October 2007, a current arrearage order

of $10.00 per month also existed. Due to unpaid arrearages, the magistrate made a first contempt finding and ordered a sentencing hearing. The trial court approved the decision the same day, making it an order of the court, and Father never filed objections. After Father failed to appear for sentencing, the court issued a capias for his arrest.

{¶ 6} In August 2010, CSEA asked the court to recall the warrant because Father was incarcerated and was scheduled to be released in November 2010. CSEA also asked the court to set another sentencing hearing. The court then recalled the warrant and set sentencing for January 2011. When Father again failed to appear, the court issued another capias for his arrest. Father did appear in March 2011; at that time, the court sentenced him to 30 days in jail with three days jail credit, but it held the matter in abeyance until August 2011. Father did not appeal from the March 2011 judgment. In August 2011, the court suspended the remaining sentence on the condition that Father comply with all court orders. Again, Father did not appeal.

{¶ 7} In November 2011, CSEA filed a motion to impose sentence because Father had failed to comply with suspension conditions. Father did not appear for the scheduled hearing, and the court once more ordered a capias issued for his arrest. The court later recalled the arrest warrant and set a hearing for October 2012. At that time, the court noted Father was $3,107.07 in arrears as of September 30, 2012. The court imposed seven days in jail and held the remaining 20 days in abeyance until April 8, 2013, on the condition that Father pay $200 toward the arrearage. Judgment (Oct. 8, 2012), p. 1. The court also issued a seek work order. After receiving notice that Father had paid $200, the court suspended the remainder of the sentence, conditioned on Father's

continued compliance with court orders. The court also said it would review the suspension on April 8, 2013. However, Father again did not appear for this scheduled hearing, and the court issued another capias.

{¶ 8} In December 2013, the court imposed the remaining suspended sentence but again held it in abeyance until May 12, 2014. Father did not appeal from the December order, nor did he appear at the May 2014 hearing. This time, based on CSEA's request, the court suspended the sentence conditioned on Father's compliance with court orders.

{¶ 9} In January 2016, CSEA filed a second contempt motion, alleging that Father had failed to pay support as ordered. In January 2017, a magistrate found that a $5,450.32 arrearage existed, ordered Father to seek employment, and scheduled a review hearing for February 28, 2017. The court approved the magistrate's decision that day and made it an order of the court. Father did not object to the magistrate's decision.

{¶ 10} On February 28, 2017, Father did appear for the review hearing. At that time, the magistrate found Father in contempt (the second contempt) for failure to pay child support. The decision allowed Father to purge the contempt by paying $750 no later than 30 days before a June 19, 2017 sentencing hearing; it also sentenced Father to 60 days in jail. This sentence was suspended on the condition that Father pay all future support orders as had been ordered. On February 28, 2017, the trial court approved the decision and adopted it. Again, Father did not file any objections to the magistrate's decision or appeal from the contempt judgment.

{¶ 11} On February 28, 2017, Father filed a complaint seeking a shared parenting

order for S.M.J.   In May 2017, a magistrate ordered that Father be allowed parenting time and scheduled a contested hearing for August 18, 2017.   In the meantime, Father failed to appear for the June 19, 2017 sentencing hearing, and the court ordered yet another capias issued for his arrest.   After Father filed a motion asking that the warrant be recalled, the court recalled it and reset sentencing for July 3, 2017.   However, Father again failed to appear, and the court ordered a capias issued for Father's arrest.

{¶ 12} When Father failed to appear for the August 2017 shared parenting hearing and the parties failed to respond to a show cause order concerning their lack of cooperation with a court-ordered home study, the magistrate dismissed Father's shared parenting complaint.   The court approved the magistrate's decision the same day and made it a court order.   No objections were filed and no appeal was taken from the dismissal of the complaint.

{¶ 13} Father was arrested on the June 2017 warrant on April 25, 2018.   The court held a sentencing hearing that day.   At this point, the unpaid arrearage was $6,239.52. The court sentenced Father to 60 days in jail, with credit for one day, leaving a 59-day balance.   Judgment Entry (Apr. 25, 2018), p. 1.   In addition, the court ordered Father to serve the sentence on consecutive weekends beginning on July 28, 2018, and it stated that the balance of the sentence would be suspended if Father paid $500 to CSEA before July 20, 2018.   The court further said Father's failure to report to jail as ordered would result in a warrant for his arrest, and Father would be ordered to serve the entire sentence on arrest.   *Id.*   Finally, Father was ordered to pay his monthly support obligation every month.   *Id.*

{¶ 14} After receiving CSEA's notice that Father had paid $500 on July 18, 2018, the court found that Father did not have to report to jail as ordered. The court further suspended the 59-day sentence on the condition that Father pay support as previously ordered. Order (Aug. 1, 2018), p. 1.

{¶ 15} On September 17, 2019, CSEA filed a motion to impose the previously suspended sentence because Father had not complied with the sentencing conditions. The court then set a hearing for December 9, 2019. For various reasons, including a service issue and COVID-19 mandates, the court continued hearings and ultimately scheduled a hearing for July 27, 2020. When Father failed to appear for the July hearing, the court again ordered a capias to be issued for his arrest. Judgment Entry (July 27, 2020). Subsequently, in December 2020, the court recalled the warrant and filed a notice for Father to appear for a January 14, 2021 hearing on imposition of sentence. Father was personally served with this notice. Judgment Entry (Dec. 21, 2020).

{¶ 16} Following the January 2021 hearing (at which Father was present), the magistrate noted a current arrearage of $7,209.12, and granted imposition of the 59-day sentence. The magistrate's decision further stated that if Father paid $500 toward the arrearage on or before April 7, 2021, the sentence would be suspended. Father was also ordered to continue to pay the monthly support obligation and was warned that failure to pay could result in a contempt motion or a motion to impose the suspended sentence. Magistrate's Decision (Jan.14, 2021), p. 1-2. Finally, the magistrate set an April 7, 2021 hearing on imposition of sentence. No objections to this decision were filed.

{¶ 17} In March 2021, counsel entered an appearance for Father, who had been

found indigent.   After the April 2021 hearing, the court granted the motion to impose sentence and ordered Father to report to jail on June 7, 2021.   However, the court also said it would suspend the balance of the sentence if Father paid $500 on or before June 2, 2021.   Again, the court ordered Father to continue to pay monthly support as ordered and stressed that failure to do so would result in a further contempt action and motion to impose sentence.   Judgment Entry (Apr. 7, 2021).   Subsequently, after receiving notice that Father had paid $500, the court suspended the 59-day jail sentence.   No appeals were taken from any of the above orders.

{¶ 18} On June 27, 2023, CSEA filed the third motion in contempt based on Father's failure to pay support as ordered.   The court then set an August 14, 2023 hearing.   Father once more failed to appear, even though he had been properly served.   At that time, the magistrate found a $7,977.32 arrearage existed as of July 31, 2023.   The magistrate found Father in contempt (the third contempt) for failure to pay, ordered a capias for Father's arrest, and stated that a hearing on sentencing would be scheduled once Father was arrested.   Magistrate's Decision (Aug. 14, 2023), p. 1-2.   On the same day, the court approved the decision and made it an order of the court.   Father did not file any objections to the decision or appeal from the third contempt finding.

{¶ 19} On September 13, 2023, Father filed a motion to have the warrant recalled, alleging that he had not been notified of a court date or time for the contempt hearing.   A hearing on this motion was set for September 20, 2023.   After that hearing (which Father attended), the court recalled the warrant, provided Father with information about the Greene County Public Defender, and set sentencing for October 2, 2023.   Father was

personally served with this judgment entry. Judgment Entry (Sept. 20, 2023), p. 1; *see also* document entitled "Personally Served" (Sept. 20, 2023) (which Father signed and in which Father acknowledged he was personally served with the September 20, 2023 Judgment Entry).

{¶ 20} Father attended the October 2 hearing, which was held before the court, not a magistrate. The court then filed a judgment sentencing Father to 59 days in jail. The court also suspended a 90-day sentence for the August 14, 2023 contempt finding on the condition that Father make all child support payments as ordered after being released from the Greene County Jail on the 59-day contempt sentence. Alternatively, Father could make a lump sum payment of $1,000 prior to October 6, 2023, and then continue to pay child support as ordered. Judgment Entry (Oct. 2, 2023), p. 1.

{¶ 21} As to the 59-day sentence, Father was ordered to serve it on consecutive weekends, beginning on October 6, 2023, at 4:00 p.m., with release on October 8, 2023, at 4:00 p.m. Father was to continue to report each Friday at 4:00 p.m. until his 59-day sentence was completed. *Id.* In addition, the court stated that failing to report for any weekend jail term would result in a warrant for Father's arrest, and Father would serve the entire sentence. *Id.* at p. 1-2.

{¶ 22} On October 6, 2023, Father timely appealed from the October 2, 2023 Judgment Entry, although he mistakenly characterized the appeal as from an order of permanent custody entered on that date.

{¶ 23} With this background in mind, we turn to Father's assignment of error.

Imposing Jail Sentence and Contempt Finding

**{¶ 24}** Father's sole assignment of error states:

[The] Trial Court Abused Its Discretion by Imposing [a] Suspended

Jail Sentence and Third Finding of Contempt on Appellant.

**{¶ 25}** Father contends, first, concerning the jail sentence, that the trial court abused its discretion by failing to weigh the full evidence and relying on erroneous facts. Father's Brief, p. 2. The facts in question involve Father's testimony at the hearing, which included, according to Father, his inability to work, mental and physical disabilities, reliance on government assistance, four other children with support orders, and possible documentation that S.M.J. had lived with Father for a number of years. In light of these facts, Father also argues the trial court abused its discretion in finding him in contempt on the third contempt charge.

## A. Contempt Standards

**{¶ 26}** "Contempt is defined in general terms as disobedience of a court order." *State ex rel. Corn v. Russo*, 90 Ohio St.3d 551, 554, 740 N.E.2d 265 (2001). "The power of contempt is inherent in a court, such power being necessary to the exercise of judicial functions." *Denovchek v. Bd. of Trumbull Cty. Commrs.*, 36 Ohio St.3d 14, 15, 520 N.E.2d 1362 (1988). "A common pleas court has both inherent and statutory power to punish contempts * * *." *Burt v. Dodge*, 65 Ohio St.3d 34, 35, 599 N.E.2d 693 (1992), citing *Zakany v. Zakany*, 9 Ohio St.3d 192, 459 N.E.2d 870 (1984), syllabus. "Civil contempt sanctions are designed for remedial or coercive purposes and are often

employed to compel obedience to a court order. * * * Thus, civil contempts are characterized as violations against the party for whose benefit the order was made." (Citation omitted.) *Corn* at 554-555. Where a court suspends a contempt sentence and allows the contempt to be purged by compliance with imposed conditions, the contempt is considered civil in nature. *E.g., Liming v. Damos*, 133 Ohio St.3d 509, 2012-Ohio-4783, 979 N.E.2d 297, ¶ 12-13 and 24. Under these standards, the contempt orders in Father's case were civil.

{¶ 27} A contempt judgment "is a final, appealable order at the time sentence is imposed and the matter is journalized, but * * * a contemnor may have an additional appeal on the limited question of whether or not the purge conditions have been met following execution of the sentence on the failure to purge." *Docks Venture, L.L.C. v. Dashing Pacific Group, Ltd.*, 141 Ohio St.3d 107, 2014-Ohio-4254, 22 N.E.3d 1035, ¶ 2. "[A]t a purge hearing, 'the propriety of the contempt finding or the purge conditions is not in question,' and the hearing is limited to determining whether the contemnor complied with conditions imposed for purging contempt." *Id.* at ¶ 20, quoting *Liming* at ¶ 30.

{¶ 28} We review contempt orders for abuse of discretion. *State ex rel. Cincinnati Enquirer v. Hunter*, 138 Ohio St.3d 51, 2013-Ohio-5614, 3 N.E.3d 179, ¶ 21. An abuse of discretion " 'implies that the court's attitude is unreasonable, arbitrary or unconscionable.' " *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983), quoting *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980). "[M]ost instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary." *AAAA Ents., Inc. v. River*

*Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).   "A decision is unreasonable if there is no sound reasoning process that would support" it.   *Id.*   This is a "highly deferential standard of review," and "we will not lightly substitute our interpretation for that of the issuing court."   *Hunter* at ¶ 29.

{¶ 29} With these points in mind, we will consider the trial court's orders.

B.   The Second Contempt and 59-Day Sentence

{¶ 30} As pertinent here, the only issue concerning the 59-day jail sentence is whether Father complied with the purge conditions.   Specifically, Father never appealed from the second contempt finding, which was made on February 28, 2017.   As noted, Father did not object to this contempt finding or appeal to our court from the order approving the magistrate's decision and making it the trial court's order.   Therefore, his opportunity to challenge the contempt finding passed years ago.

{¶ 31} In the February 28, 2017 order, the court gave Father purge conditions concerning the contempt finding, but Father did not comply with the conditions.   After Father was arrested in April 2018, the court actually lessened one purge condition from paying $750 to paying $500.   Father complied with the requirement of paying $500, but an additional requirement was that Father continue to pay child support as ordered. Father failed to do that and was brought into court various times over the next several years, during which the court continued to give Father chances to purge the contempt. Ultimately, after Father's repeated default on conditions and arrests for failing to appear for court hearings, the court finally required Father to serve the 59-day sentence in

October 2023 – more than five years after it was initially imposed.

{¶ 32} During the October 2, 2023 hearing, Father testified that he had worked at a food truck off and on that year (2023) and had been paid in cash. He also stated that the last time he had had a job for which he was paid on a regular basis and had taxes withheld was about three years earlier (which would have been in 2020). Complete Transcript of Proceedings ("Tr."), 3. Father further said that, at the time of the hearing, he received food assistance and Medicaid, for which he was required to perform work for a certain number of hours per month. *Id.* at 3-4. According to Father, he had a few disabilities that prevented him from working, such as "mental," for which he saw a counselor once a month, diabetes, and high blood pressure. *Id.* at 5. Father was supposed to be on medication, however he did not take it due to the way it made him feel. *Id.* During the hearing, Father offered no proof about any of these matters other than his own testimony, and he did not say when any of these alleged issues began. He also did not testify that he had been determined to be disabled for purposes of receiving Social Security disability benefits.

{¶ 33} Father was represented by counsel at the October hearing and had been represented by counsel previously. As CSEA points out, Father had had time to provide evidence to the court but failed to produce any documentation. CSEA Brief, p. 7. Moreover, Father's testimony itself was very sparse, with few details.

{¶ 34} Viewing the 15-year history of the case from 2008 through 2023, we note that Father was given a very minimal support order of $50 per month. He failed to pay of his own volition, repeatedly failed to appear for court, which resulted in warrants for his

arrest, and paid only when he had to do so to avoid going to jail. In the particular instance of the second contempt, the court gave Father many chances to comply with the purge conditions. However, Father still failed to comply. Even after five years had elapsed, Father failed to bring any documentation to court to support anything he said. Accordingly, the trial court's decision to finally require Father to serve 59 days in jail was not arbitrary, unconscionable, or unreasonable.

### C. Third Contempt Finding and Sentence

{¶ 35} This discussion initially concerns the third contempt finding, which a magistrate made on August 14, 2023. As noted, the trial court approved the magistrate's decision and made it an order of the court the same day. Again, Father failed to object to the magistrate's decision. However, while the court made a contempt finding, the court's order was not final and appealable order because the court had not yet imposed any sentence. *Docks Venture, L.L.C.*, 141 Ohio St.3d 107, 2014-Ohio-4254, 22 N.E.3d 1035, at ¶ 2. The final appealable order was entered on October 2, 2023, when the court imposed a 90-day sentence for the third contempt, with purge conditions.

{¶ 36} Given that Father did not object to the magistrate's contempt decision as required by Civ.R. 53(D)(3)(b)(i) and (iv), we review any issue concerning the third contempt finding for plain error only. *E.g.*, *Stevenson v. Dunn*, 2d Dist. Greene No. 2023-CA-12, 2023-Ohio-2411, ¶ 7, citing Civ.R. 53. "In appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court,

seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 1997-Ohio-401, 679 N.E.2d 1099. This is not such a case.

{¶ 37} Because Father failed to appear for the August 14, 2023 contempt hearing, there is no plain error, or even any error. Father obviously failed to present any evidence, and the affidavit from CSEA, filed on August 14, 2023, revealed an arrearage of $7,977.32. It also indicated that Father's last payment had been made on May 28, 2021. Clearly, Father failed to pay support as ordered, and the third contempt finding was warranted. Even if we were to consider this decision under an abuse of discretion standard, the contempt finding was very reasonable.

{¶ 38} The only issue to be addressed at the October 2, 2023 sentencing hearing was what sentence should be imposed for the third contempt finding. At that point, Father's alleged excuses for repeatedly failing to pay as ordered, including his assertion that S.M.J. had lived with him for a time, were not pertinent. Even if they had been relevant to the court's sentencing decision, Father's excuses were unsupported by any documentation. As noted, Father had time to bring any documentation to court that he needed. *See* CSEA Brief at p. 7.

{¶ 39} Under R.C. 2705.05(A)(3), for a third offense, the court may impose "a fine of not more than one thousand dollars, a definite term of imprisonment of not more than ninety days in jail, or both." We have previously said this statute does not limit courts from imposing other sanctions based on their inherent power to punish contempt. *Johnson v. Johnson*, 2020-Ohio-1644, 154 N.E.3d 310, ¶ 20 (2d Dist.). Consequently,

while the trial court needed to follow the procedures in R.C. 2705.05(A), it was not restricted to the punishments in the statute.

{¶ 40} In any event, "courts have 'wide discretion to determine the punishment for contempt of [their] own orders.' " *Id.* at ¶ 20, quoting *State ex rel. Anderson v. Indus. Comm.*, 9 Ohio St.3d 170, 172, 459 N.E.2d 548 (1984). Therefore, we review for abuse of discretion under the standards mentioned above, which involve whether the trial court acted arbitrarily, unconscionably, or unreasonably. *See AAAA Ents.,* 50 Ohio St.3d at 161, 553 N.E.2d 597.

{¶ 41} Given Father's repeated failure to pay, disregard of court orders, and failure to appear for hearings, the trial court could have imposed a fine or other sanctions in addition to imposing a 90-day jail sentence. The court, however, chose not to do so, and, as in the past, gave Father yet another opportunity to purge the contempt and avoid going to jail. This was more than reasonable.

{¶ 42} Based on the preceding discussion, Father's sole assignment of error is overruled.

### III. Conclusion

{¶ 43} Father's assignment of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

EPLEY, P.J. and TUCKER, J., concur.